## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANUVU CORP., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | **C.A. No. 25-cv-124-CFC** |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| INTELLECTUAL VENTURES I LLC and | ) | |
| INTELLECTUAL VENTURES II LLC | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF
## <u>MOTION TO DISMISS, STAY, OR TRANSFER</u>

Dated: March 18, 2025

Of Counsel:

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
John Downing
Heather S. Kim
ThucMinh Nguyen
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Dr., Suite 200
Redwood Shores, CA 94065
Tel: (650) 453-5170
Fax: (650) 362-9302
JWaldrop@kasowitz.com
DJones@kasowitz.com
MBarber@kasowitz.com
JDowning@kasowitz.com
HKim@kasowitz.com
TNguyen@kasowitz.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Attorneys for Defendants
*Intellectual Ventures I LLC and*
*Intellectual Ventures II LLC*

Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street, N.E., Suite 2445
Atlanta, Georgia 30309
Tel: (404) 260-6080
Fax: (404) 260-6081
PWilliams@kasowitz.com

## **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ....................................................................1

II.   FACTS ......................................................................................................2

    A.    The Southwest Litigation ......................................................2

    B.    Anuvu's Declaratory Judgment Action.................................3

III.  ARGUMENT.............................................................................................4

    A.    The First Filed Rule Requires Dismissal Of This Action In
          Favor Of The Southwest Litigation.........................................4

         1.    The '326 Patent and '469 Patent are the Subject of the
              First-Filed Southwest Litigation ..................................4

         2.    Complete Overlap Between the Parties in the Two Actions
              is Not Required to Apply the First-Filed Rule...........6

         3.    There are No Applicable  Exceptions to the First-Filed
              Rule ...............................................................................8

    B.    Alternatively, The Court Should Stay This Case Or Transfer
          It To The WDTX Under 28 USC § 1404(a) .......................10

         1.    Venue Would Have Been Proper In The WDTX ....................11

         2.    Anuvu's Choice of Forum is Not Entitled to Significant
              Deference ....................................................................12

         3.    IV's Choice of Forum Should be Entitled to Deference..........13

         4.    Anuvu's Claims Did Not Arise In Delaware ...........................14

         5.    The Convenience of the Parties Weighs in Favor of
              Transfer ........................................................................14

         6.    The Location of Books and Records Favors Transfer ..............16

      7.     The Public Interest Factors Also Weigh in Favor of
            Transfer to Texas ......................................................................17

      8.     This Action Should Be Stayed...................................................19

IV.    CONCLUSION................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*,
  295 F. Supp. 2d 393 (D. Del. 2002)....................................................................12

*Ballard Med. Prods. v. Concord Lab'ys, Inc.*,
  700 F. Supp. 796 (D. Del. 1988)........................................................................17

*Bank of Am. v. S.I.P. Assets, LLC*,
  No. CIVA 07-159 GMS, 2007 WL 2698192 (D. Del. Sept. 11,
  2007) ......................................................................................................................5

*Bell Tel. Lab'ys, Inc. v. Int'l Bus. Machines Corp.*,
  630 F. Supp. 373 (D. Del. 1984)........................................................................13

*Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*,
  No. 16–733–GMS, 2017 WL 1536394 (D. Del. Apr. 27, 2017).......................12

*Burstein v. Applied Extrusion Techs., Inc.*,
  829 F. Supp. 106 (D. Del. 1992)..................................................................14, 15

*In re Cinemark Holdings, Inc.*,
  839 Fed. App'x 476 (Fed. Cir. 2020) ..................................................................6

*Clopay Corp. v. Newell Companies, Inc.*,
  527 F. Supp. 733 (D. Del. 1981)........................................................................15

*Corixa Corp. v. IDEC Pharms. Corp.*,
  No. CIV.A.01-615-GMS, 2002 WL 265094 (D. Del. Feb. 25,
  2002) ...........................................................................................................4, 7, 15

*Dippold-Harmon Enter., Inc. v. Lowe's Cos., Inc.*,
  No. 01–532–GMS, 2001 WL 1414868 (D. Del. Nov. 13, 2001) ..................4, 16

*Fleet Connect Sols., LLC v. Precision Drilling Corp.*,
  No. 6:21-cv-00987-ADA, 2022 WL 2373711 (W.D. Tex. June 30,
  2022) .............................................................................................................6, 10

*Freedom Mortg. Corp. v. Irwin Fin. Corp.*,
No. 08–146 GMS., 2009 WL 763899 (D. Del. Mar. 23, 2009) ................4, 7, 10

*Fuisz Pharma LLC v. Theranos, Inc.*,
No. 11-1061-SLR-CJB, 2012 WL 1820642 (D. Del. May 18, 2012) ...............18

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) .........................................................................16

*Intellectual Ventures I LLC et. al. v. Southwest Airlines Co.*,
No. 7:24-cv-00277 (W.D. Tex.) ............................................................................1

*Ivoclar Vivadent AG v. 3M Co.*,
No. 11-1183-GMS-SRF, 2012 WL 2374657 (D. Del. June 22,
2012) .............................................................................................................18, 19

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995) ......................................................................*passim*

*In re Link A Media Devices Corp.*,
662 F.3d 1221 (Fed. Cir. 2011) ........................................................................12

*Microchip Tech., Inc. v. Motorola, Inc.*,
No. Civ.A. 01-264-JJF, 2002 WL 32332753 (D. Del. May 28,
2002) ..................................................................................................................19

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*,
No. 12-462 GMS, 2012 WL 3777423 (D. Del. Aug. 30, 2012)..................11, 15

*MoneyCat Ltd. v. PayPal Inc.*,
No. 1:13–1358, 2014 WL 2042699 (D. Del. May 15, 2014) ............................12

*Nexans Inc. v. Belden Inc.*,
966 F. Supp. 2d 396 (D. Del. 2013)....................................................................8

*Reisman v. Van Wagoner Funds, Inc.*,
No. Civ.A. 02–012–SLR., 2002 WL 1459384 (D. Del. June 7,
2002) ..................................................................................................................10

*Schering Corp. v. Amgen Inc.*,
969 F. Supp. 258 (D. Del. 1997)........................................................................13

*In re Seattle Spinco, Inc.*,
  817 Fed. Appx. 987 (Fed. Cir. 2020)......................................................................6

*Time Warner Cable, Inc. v. GPNE Corp.*,
  497 F. Supp. 2d 584 (D. Del. 2007)....................................................................6, 7

*Time Warner Cable, Inc. v. USA Video Tech. Corp.*,
  520 F. Supp. 2d 579 (D. Del. 2007)......................................................................6

*TSMC Tech., Inc. v. Zond*,
  LLC, No. 14–721–LPS–CJB, 2014 WL 7251188 (D. Del. Dec. 19,
  2014) .................................................................................................................13

*Woodbolt Distribution, LLC v. Nat. Alternatives. Int'l, Inc.*,
  No. 11–1266 GMS, 2013 WL 247041 (D. Del. Jan. 23, 2013)............................8

**Statutes**

28 U.S.C. § 1391(b)(2)........................................................................................11

28 U.S.C. § 1404....................................................................................................1

28 USC § 1404(a) .........................................................................................10, 17

**Other Authorities**

Fed.R. Civ. P 12(b)(1)............................................................................................1

v

Defendants Intellectual Ventures I LLC, and Intellectual Ventures II LLC ("IV") respectfully submit this Motion to Dismiss or, in the Alternative, Stay or Transfer Plaintiff Anuvu, Corp.'s ("Anuvu") Complaint for Declaratory Judgment ("Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 1404.[1]

## I.   PRELIMINARY STATEMENT

This litigation is a coordinated attempt by Anuvu and its customer, Southwest Airlines ("Southwest"), to prevent IV from protecting its patent rights in the forum of its choice. In November 2024, IV filed a patent infringement case against Southwest, *Intellectual Ventures I LLC et. al. v. Southwest Airlines Co.*, No. 7:24-cv-00277 (W.D. Tex.) for its infringement of six of IV's patents. ("the Southwest Litigation") Ex. 1 (Southwest Complaint). However, two months later, even though Anuvu's principal place of business is in Lombard, Illinois, Anuvu filed this lawsuit, before this Court, purporting to seek a declaratory judgment for two of the six patents with regards to technology that Anuvu provides – arguing that *Anuvu* has not infringed two patents involved in the Southwest Litigation. As shown below, the issues Anuvu purportedly seeks to resolve through its declaratory judgment action substantially overlap with issues that will be presented and decided in the first-filed

---

[1] Submitted herewith is the March 18, 2025 Declaration of Jonathan K. Waldrop ("Waldrop Decl."), with exhibits thereto ("Ex. __").

Southwest Litigation. Allowing Anuvu's action to go forward here would violate settled law, inefficiently consume Court resources, increase the burden on the parties, risk inconsistent judgments, and interfere with IV's right to enforce its patents. Accordingly, this action should be dismissed, stayed, or transferred to the Western District of Texas ("WDTX").

## II.    FACTS

### A.    The Southwest Litigation

On November 11, 2024, IV filed the Southwest Litigation. In that case, IV alleges that Southwest infringes six patents: United States Patent Nos. 8,332,844 (the "'844 Patent"); 8,407,722 (the "'722 Patent"); 8,027,326 (the "'326 Patent"); 7,324,469 (the "'469 Patent"); 7,257,582 (the "'582 Patent"); and 7,949,785 (the "'785 Patent"), Ex. 1 (Southwest Complaint).

On January 27, 2025, Southwest filed a motion to dismiss the Southwest Litigation, arguing that the '844 Patent and '582 Patent claim ineligible subject matter, and that IV failed to state claims of direct and indirect infringement. Ex. 2 (Southwest's Motion to Dismiss).[2] On February 12, 2025, Southwest filed a motion to stay and sever two of the six patents-in-suit, the '326 and '469 patents, based on the pendency of Anuvu's later-filed declaratory judgment action. Ex. 3 (Southwest's Motion to Stay and Sever).

---

[2] IV's response to Southwest's motion to dismiss is not due until March 19, 2025.

**B.      Anuvu's Declaratory Judgment Action**

On January 30, 2025, Anuvu filed this case, seeking a declaratory judgment of non-infringement with regards to the '326 and '469 Patents with respect to technology that Anuvu provides. *See* D.I. 1. Anuvu's Declaratory Judgement Complaint does not address the other four patents involved in the Southwest Litigation and does not address technology provided by other vendors with regards to the '326 and '469 Patents. Anuvu claims that the Southwest Litigation "directly accuse[s] Anuvu's in-flight connectivity systems of patent infringement, impacting Anuvu's business and relationships with its customers" and that IV's allegations are barred by patent exhaustion. *Id*. at ¶ 9. Anuvu's Complaint does not allege that it is the exclusive provider of the accused functionality in the Southwest Litigation or that it has possession, custody, and control of all the hardware, software, and witnesses relevant to Southwest (nor could it, as there are several other providers, including at least ViaSat and Intelsat, that provide at least portions of the accused hardware and software to Southwest). *See* D.I. 1. There have been no other filings in this action.

## III.  ARGUMENT

### A.  The First Filed Rule Requires Dismissal Of This Action In Favor Of The Southwest Litigation

#### 1.  The '326 Patent and '469 Patent are the Subject of the First-Filed Southwest Litigation

The first-filed rule requires dismissal of this action because the Southwest Litigation involves infringement of, among others, the same patents Anuvu seeks to litigate here. Because Anuvu only seeks adjudication of a *subset* of the patents asserted in the Southwest Litigation (Anuvu has only asserted the '326 and '469 Patents), judicial efficiency weighs in favor of adjudicating all patents in the Southwest Litigation. As this Court has held, "having two separate trials in mirror image cases would defeat the purposes of the first-filed rule, namely, sound judicial administration and comity among federal courts of equal rank." *Corixa Corp. v. IDEC Pharms. Corp.*, No. CIV.A.01-615-GMS, 2002 WL 265094, at *1 (D. Del. Feb. 25, 2002).

As shown above, the Southwest Litigation is indisputably the first-filed action. Moreover, that Anuvu's lawsuit does not pertain to *all* the patents involved in the Southwest Litigation does not preclude application of the first-filed rule. That rule applies "where the claims all pertain to the subject matter of another dispute already before a competent court." *Freedom Mortg. Corp. v. Irwin Fin. Corp.*, No. 08–146 GMS., 2009 WL 763899, at *4 (D. Del. Mar. 23, 2009). *See also Dippold-Harmon Enter., Inc. v. Lowe's Cos., Inc.*, No. 01–532–GMS, 2001 WL

1414868, at *5 (D. Del. Nov. 13, 2001) (applying first-filed rule where resolution of first action would "bear directly" on later-filed action).

In the Southwest Litigation, the issues that Anuvu seeks to resolve (*i.e.*, whether its in-flight connectivity systems directly or indirectly infringe any claims of the '326 Patent and '469 Patent) will be resolved. Indeed, in the Southwest Litigation, infringement of the '326 Patent and '469 Patent are central issues. *See* Ex. 1 (Southwest Complaint) at ¶¶ 86-101, 102-117. Allowing both cases to proceed concurrently would be both inconvenient to the parties and an inefficient use of judicial resources. *See Bank of Am. v. S.I.P. Assets, LLC*, No. CIVA 07-159 GMS, 2007 WL 2698192, at *3 (D. Del. Sept. 11, 2007).

Moreover, both actions will almost certainly involve overlapping witnesses and evidence. These actions will involve many of the same third parties, such as the inventors of the patents, and witnesses to the alleged infringement occurring in Texas. Rather than maintain two substantially similar litigations in two separate courts, this Court should dismiss or stay this action in favor of the first-filed Southwest Litigation or transfer of this case to the WDTX.[3] Additionally, this case will not resolve the Southwest Litigation, since Anuvu is only one of the providers

---

[3] To the extent that Anuvu argues that venue is not proper in either judicial district, the Court should use its discretion to dismiss or stay the cases in favor of the first-filed Southwest Litigation. On February 28, 2025, Southwest filed a motion to transfer venue to the Northern District of Texas.

of the Accused Functionality and does not contend it is the sole provider of the software and hardware for the '326 and '469 patents. *See* D.I. 1. *In re Cinemark Holdings, Inc.*, 839 Fed. App'x 476, 478-479 (Fed. Cir. 2020) (venue properly left in Texas where declaratory judgment proceeding in different court would not resolve all infringement issues related to multiple technologies); *Fleet Connect Sols., LLC v. Precision Drilling Corp.*, No. 6:21-cv-00987-ADA, 2022 WL 2373711, *2–*4 (W.D. Tex. June 30, 2022) (denying defendant's motion to stay infringement action in favor of later-filed DJ action when component was not infringed by merely being used off-the-shelf, noting that accused infringer combined its own products with accused product to create accused system.) Indeed, allowing this case to proceed would encourage waves of declaratory judgment suits by each infringing component supplier, defeating, rather than encouraging, efficient use of the courts' resources.

### 2. Complete Overlap Between the Parties in the Two Actions is Not Required to Apply the First-Filed Rule

Though Anuvu was not named in the Southwest litigation, "the Third Circuit applies the first-filed rule to litigation that involves the same subject matter, not necessarily the same parties." *Time Warner Cable, Inc. v. USA Video Tech. Corp.*, 520 F. Supp. 2d 579, 585 (D. Del. 2007); *see also Time Warner Cable, Inc. v. GPNE Corp.,* 497 F. Supp. 2d 584, 589 (D. Del. 2007) (the 3rd Circuit applies the first-filed rule to "cases involving the same issues" where the parties are not identical); *see also In re Seattle Spinco, Inc.,* 817 Fed. Appx. 987, 989 (Fed. Cir. 2020) (noting that

appellate courts have not adopted an interpretation of the first-filed rule that would be "determined by which court first secures personal jurisdiction over the parties") as opposed to first securing jurisdiction over the issues). Indeed, Anuvu alleges that "[t]he litigation brought by Intellectual Ventures I and Intellectual Ventures II against Southwest Airlines Co. ("Southwest") directly accuses Anuvu's in-flight connectivity systems of patent infringement, impacting Anuvu's business and relationships with its customers" D.I. 1 at ¶ 9. Even if there were a requirement that the parties in the two actions be the same, which there is not, because Anuvu clearly acknowledges that its interests are aligned with the interests of Southwest, the first-filed rule would still govern. *See Freedom Mortg.*, 2009 WL 763899, at *13 (applying first-filed rule where interests of parties in earlier-filed suit aligned with those in later-filed suit); *see also Corixa*, 2002 WL 265094, at *2 (applying first-filed rule when a party in the second-filed suit was not a party to the first-filed litigation).

Accordingly, because the WDTX initially had jurisdiction over the subject of this case, IV's choice of forum should be shown deference and Anuvu's action should be dismissed. *See GPNE*, 497 F. Supp. 2d 589-90. (The first-filed rule "turn[s] 'on which court first obtains possession of the subject of the dispute, not the parties of the dispute.'").

### 3.    There are No Applicable  Exceptions to the First-Filed Rule

There are no exceptions to the first-filed rule that apply here, and dismissal of this action is thus appropriate. "Factors that have been regarded as proper bases for departing from the first-filed rule include bad faith, forum shopping, when the second-filed action has 'developed further than the initial suit,' and 'when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum.'" *Nexans Inc. v. Belden Inc.*, 966 F. Supp. 2d 396, 403 (D. Del. 2013) (citations omitted). To apply these factors, "[c]ourts must be presented with *exceptional circumstances*" *Id*. at 403-04.

Anuvu makes no allegations of bad faith. Further, the instant action is not anticipatory because the parties in this action were not engaged in discussions prior to filing of the Southwest Litigation, and there were no indications that IV was considering suing Anuvu. *See Woodbolt Distribution, LLC v. Nat. Alternatives. Int'l, Inc.*, No. 11–1266 GMS, 2013 WL 247041, at *4 (D. Del. Jan. 23, 2013) (finding commencement of the suit anticipatory because the parties engaged in several discussions regarding the allegations of patent infringement). Finally, this litigation has not developed further than the Southwest Litigation.[4]

---

[4] For example, in the Southwest Litigation, the parties have already filed a Joint Case Readiness Status Report and IV has served Preliminary Infringement Contentions.

Further, Anuvu has not alleged it is the exclusive provider of in-flight connectivity ("IFC") services to Southwest or that it provides all of the hardware and software and has possession, custody, and control of the relevant documents and witnesses. *See* D.I. 1 at ¶ 48. Accordingly, the Southwest Litigation should proceed on the same patents in this case on all other Southwest IFC providers.

Moreover, Anuvu's second-filed litigation will not resolve all issues between IV and Southwest as to the '326 Patent and '469 Patent because the patents at issue recite elements that are specific to Southwest. For example, IV alleges infringement of claim 24 of the '469 Patent:

> An internet hotspot comprising:
>
> a satellite dish communicating with the Internet via one or more data links with a satellite; …
>
> and
>
> *a web ready device operatively coupled to the at least one router*, the web read device..,
>
> wherein the satellite dish, … are located in a remote location a experiencing a relatively high volume of transient traffic;
>
> wherein *the user may authenticate the subscription account and access the Internet at the remote location by establishing a data connection between the web-ready device and the router.*

Ex. 4 at 8:24-43 (emphasis added). That Claim includes limitations that Anuvu fails to contend that it provides to Southwest. For example, Anuvu is silent as to its responsibility with respect to the authentication step ("*the user may authenticate the subscription account…*"). *See* Ex. 1 (Southwest Complaint) at 16, 24. Moreover,

Anuvu does not provide details on what specifically it provides and how proceeding in Delaware in parallel is convenient. Thus, IV's complaint involves claims that touch upon how Southwest specifically enables its passengers to access in-flight Wi-Fi through authentication on Southwest's web portal, which involves steps and components that go beyond Anuvu's in-flight Wi-Fi systems. *See Fleet Connect Sols.,* 2022 WL 2373711, at *2-4 (denying customer suit exception to the first-filed rule when component was not used "off-the-shelf" by customer.) Accordingly, this action should be dismissed.

### B.    Alternatively, The Court Should Stay This Case Or Transfer It To The WDTX Under 28 USC § 1404(a)

Even if the Court declines to dismiss this action, it should transfer it to the WDTX or, at a minimum, stay the case pending resolution of the Southwest Litigation. *See Freedom Mortg.*, 2009 WL 763899, at *5-7 ("application of the "first-filed" rule weighs heavily in this court's analysis and compels transfer in the interest of justice"); *Reisman v. Van Wagoner Funds, Inc.*, No. Civ.A. 02–012–SLR., 2002 WL 1459384, at *1 (D. Del. June 7, 2002) (the "second filed action should be stayed or transferred to the court where the first filed action is pending").

As the Third Circuit has explained, § 1404(a) "was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). The Court engages in a two-

10

step inquiry: first asking whether the action could have been brought originally in the proposed transferee court and then asking whether the "balance of convenience" factors favor transfer. *Id*. Private interest factors include: (i) plaintiff's forum preference as manifested in the original choice; (ii) the defendant's preference; (iii) whether the claim arose elsewhere; (iv) the convenience of the parties as indicated by their relative physical and financial condition; (v) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (vi) and the location of books and records. *Id*. at 879. Here, the private interest factors weigh in favor of transfer.

### 1.    Venue Would Have Been Proper In The WDTX

Anuvu's action could have been brought in the WDTX. "[T]he court may only order transfer to the [transferee court] if that district court would have had proper personal jurisdiction, subject matter jurisdiction, and venue." *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, No. 12-462 GMS, 2012 WL 3777423, at *4 (D. Del. Aug. 30, 2012). A civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred …" 28 U.S.C. § 1391(b)(2). IV has alleged infringement stemming from Southwest's use of Wi-Fi systems technology in its airplanes, and Southwest is located in the WDTX. Ex. 1. Accordingly, a "substantial part" of Anuvu's claim – which emanates from IV's Southwest litigation – arose in the WDTX. Moreover, as IV brought suit in the

11

WDTX for infringement of the same patents involved here, Anuvu could certainly have simply intervened in that first-filed action. The *Jumara* private and public factors, which weigh in favor of transfer, must be analyzed.

### 2. Anuvu's Choice of Forum is Not Entitled to Significant Deference

Anuvu's choice of forum is not entitled to deference here. First, the only connection between Anuvu and Delaware is Anuvu's incorporation. Indeed, Anuvu admits its principal place of business is in Illinois. D.I. 1 at ¶ 2. Mere incorporation in Delaware is entitled little weight. *See In re Link A Media Devices Corp.*, 662 F.3d 1221, 1223-24 (Fed. Cir. 2011) (reversing denial of transfer motion, *inter alia*, because district court gave too much weight to state of incorporation); *Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*, No. 16–733–GMS, 2017 WL 1536394, at *3 (D. Del. Apr. 27, 2017) (incorporation in Delaware given reduced deference where "Delaware is not home to [plaintiff's] principal place of business"); *MoneyCat Ltd. v. PayPal Inc.*, No. 1:13–1358, 2014 WL 2042699, at *6 (D. Del. May 15, 2014) (declining to give "significant weight" to defendant's incorporation in Delaware, finding transfer appropriate where "neither party has a significant physical connection to Delaware"); *APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 398-99 (D. Del. 2002) (incorporation in Delaware not dispositive "where an alternative forum is more convenient and has more substantial connections with the litigation"). Indeed, in these circumstances, giving priority to

IV's choice of forum is consistent with the "historic respect accorded the first-filed plaintiff's choice of forum." *TSMC Tech., Inc. v. Zond*, LLC, No. 14–721–LPS–CJB, 2014 WL 7251188, at *21 (D. Del. Dec. 19, 2014).

### 3. IV's Choice of Forum Should be Entitled to Deference

The first-filed rule dictates that the plaintiff *in the first-filed action* is the party whose forum choice is entitled to "plaintiff" deference. *See Schering Corp. v. Amgen Inc.,* 969 F. Supp. 258, 268 (D. Del. 1997) ("[The first-filed plaintiff] filed the original complaint; as the plaintiff, its choice of forum is 'a paramount consideration' and 'should not be lightly disturbed.'") (quoting *Schutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970)); *Bell Tel. Lab'ys, Inc. v. Int'l Bus. Machines Corp.*, 630 F. Supp. 373, 377 (D. Del. 1984) ("The second-filed plaintiff] thus had ample opportunity to become aware of the [first-filed] action before it filed in Delaware but instead it brought a new action in a forum that has little, if any, connection with the subject matter of this litigation. Under these circumstances, the balance of equities favors awarding [the first-filing plaintiff], as the first to file, its choice of forum.").

Because IV first-filed the Southwest Litigation, IV is entitled to its choice of forum to litigate the claims related to the '326 and '469 patents.

### 4.    Anuvu's Claims Did Not Arise In Delaware

Another relevant *Jumara* factor is whether the claim arose elsewhere. *See Jumara,* 55 F.3d at 879. This factor also favors transferring to Texas. Anuvu filed this action because, it alleges, "[IV's] litigation campaign directly accuses Anuvu's products of patent infringement, impacting Anuvu's business and relationships with its customers." D.I. 1 at ¶ 9. Clearly this action emanates from the Southwest Litigation, which focuses on acts of infringement in Texas by a company with its place of business in Texas. *See* Ex. 1 (Southwest Complaint). Anuvu's claim "arose elsewhere."

Anuvu does not – because it cannot – claim that there are acts of either Anuvu or IV in Delaware giving rise to this lawsuit. As shown above, neither party maintains an office or has employees in Delaware. Where, as here, Delaware's connection to the acts giving rise to a lawsuit is "insubstantial," transfer is warranted. *See Burstein v. Applied Extrusion Techs., Inc.,* 829 F. Supp. 106 (D. Del. 1992) (granting transfer despite defendant's incorporation in Delaware, where most relevant events occurred elsewhere).

### 5.    The Convenience of the Parties Weighs in Favor of Transfer

The fourth private interest *Jumara* factor is the "convenience of the parties as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 889. In considering this factor, courts have looked to several elements, including the

14

parties' physical location and the relative ability of each party to bear these costs in light of its size and financial wherewithal. *Mitek Sys*, 2012 WL 3777423, at \*6. IV would be highly inconvenienced should this case proceed in Delaware when two cases concerning the exact same patents are already underway in Texas. Additionally, because Anuvu is but one of the providers of the Wi-Fi systems used by Southwest, Anuvu would already have to prepare for litigation in Texas anyway. *See* Ex. 3 (Southwest Motion Sever and Stay). "Bringing witnesses and relevant documents to only one location, [Texas,] would minimize the level of disruption caused to all parties by the litigation." *Corixa*, 2002 WL 265094, at \*3. Transferring this case to Texas would present a "more economical and efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being litigated at that time." *Id*.

When the plaintiff has chosen to bring suit in a district that has no connection to any of the acts giving rise to the lawsuit, "the convenience to the plaintiff is 'not as great as it would be where [it is] litigating at or near [its] principal place of business or at the site of the activities at issue in the lawsuit.'" *Burstein*, 829 F. Supp. at 110 (internal citations omitted). Consequently, the "'quantum of inconvenience to defendant needed to tip the balance strongly in favor of transfer' is concomitantly reduced." *Clopay Corp. v. Newell Companies, Inc.*, 527 F. Supp. 733, 736 (D. Del. 1981) (internal citations omitted).

Moreover, Anuvu is a multinational company (*see* Ex. 5 (https://www.anuvu.com/our-company/about-us/offices (last accessed March 18, 2025)) and will not unreasonably suffer if the case proceeds in Texas.

### 6. The Location of Books and Records Favors Transfer

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006). But the Court gives weight to this factor only "to the extent that the files [and other evidence] could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. The location of documentary evidence favors transfer when relevant documents will already be available in the forum of the first-filed litigation. *See Dippold-Harmon Enter.*, 2001 WL 1414868, at *7.

Here, because of the first-filed Southwest Litigation, documentary evidence of Southwest's use of the infringing technology will be produced and available in Texas. Further, all relevant documents could as easily be produced in Texas as in Delaware (and more easily for Southwest, which is headquartered in Texas). Therefore, the location of the books and records factor also favors transfer.

### 7.   The Public Interest Factors Also Weigh in Favor of Transfer to Texas

The public interest factors include, *inter alia*: (i) the enforceability of the judgment; (ii) practical considerations that could make the trial easy, expeditious, or inexpensive; (iii) the relative administrative difficulty in the two fora resulting from court congestion; (iv) the local interest in deciding local controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable state law in diversity cases. *See Jumara*, 55 F.3d at 879.

The public interest *Jumara* factors either favor transfer or are neutral. It is well established that, "the court should litigate all issues arising relating to patents in one place." *Ballard Med. Prods. v. Concord Lab'ys, Inc.*, 700 F. Supp. 796, 801 (D. Del. 1988). The Southwest Litigation will continue *regardless* of whether this action is transferred to Texas. But since both suits raise overlapping factual and legal issues, permitting the Southwest Litigation and this case to proceed simultaneously would "produce the waste of time, energy, and money that § 1404(a) was designed to prevent." *Id*. The competing litigations will likely involve many of the same witnesses, experts and documents regarding infringement, such that litigating here would not make the trial "easy, expeditious, or inexpensive." *Id*. If this action is not stayed or transferred, the parties will have to litigate in several fora, while Anuvu's dispute could easily, and will necessarily, be resolved in the Southwest Litigation. Continuing to litigate in multiple districts would waste the resources of both the

17

parties and the Court. For example, there will be a need for third-party discovery from Southwest that already would be taking place in Texas. Additionally, to fully adjudicate this case in Delaware, it would be necessary to address issues such as the other declaratory action[5], the software involved and licensing issues and the claims being made in Texas. Therefore, practical considerations generally weigh in favor of transfer to Texas.

The other public factors are either neutral or irrelevant. For example, the judgment would be enforceable in both jurisdictions regardless of where the case proceeds. Additionally, the public policies of the two fora are insignificant because this is a patent case that "implicates federal law and national public policies." *Ivoclar Vivadent AG v. 3M Co.*, No. 11-1183-GMS-SRF, 2012 WL 2374657, at *14 (D. Del. June 22, 2012). To the extent the local interest factor applies, the accused company Southwest is being sued in its home forum for infringing activities carried out in there. That dispute should be resolved in the WDTX. *See, e.g.*, *Fuisz Pharma LLC v. Theranos, Inc.*, No. 11-1061-SLR-CJB, 2012 WL 1820642, at *17 (D. Del. May 18, 2012) ("The [transferee district] nevertheless has a local interest regarding this action, in that this suit relates to infringement that allegedly occurred in that district, by [] employees who work in that district."). The last *Jumara* factor is irrelevant.

---

[5] On January 14, 2025, Viasat, Inc. filed a complaint for declaratory judgment based on the '326 Patent and '469 Patent.

"[P]atent claims are governed by federal law, and as such both [courts are] capable of applying patent law to infringement claims." *Ivoclar Vivadent AG*, 2012 WL 2374657, at *13 (internal citations omitted)). Consequently, the public interest *Jumara* factors either favor transfer or are neutral.

### 8.    This Action Should Be Stayed

If the Court decides not to dismiss or transfer this action, it may nonetheless stay this action until the WDTX issues a final judgment. *See Microchip Tech., Inc. v. Motorola, Inc.*, No. Civ.A. 01-264-JJF, 2002 WL 32332753, at *8 (D. Del. May 28, 2002). Here, considerations of comity and wise judicial administration warrant the Court staying this action to allow the WDTX to determine the application of the first-to-file rule. IV respectfully requests that the Court stay this action until the WDTX issues its decision regarding IV's infringement allegations.

## IV.    CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety or, in the alternative, this case should be transferred to the Western District of Texas or stayed.

Dated:  March 18, 2025

Of Counsel:

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
John Downing
Heather S. Kim
ThucMinh Nguyen
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Dr., Suite 200
Redwood Shores, CA 94065
Tel: (650) 453-5170
Fax: (650) 362-9302
JWaldrop@kasowitz.com
DJones@kasowitz.com
MBarber@kasowitz.com
JDowning@kasowitz.com
HKim@kasowitz.com
TNguyen@kasowitz.com

Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street, N.E., Suite 2445
Atlanta, Georgia 30309
Tel: (404) 260-6080
Fax: (404) 260-6081
PWilliams@kasowitz.com

Respectfully submitted,

FARNAN LLP

*/s/ Brian E. Farnan*
 Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Attorneys for Defendants
*Intellectual Ventures I LLC and*
*Intellectual Ventures II LLC*

20

## <u>CERTIFICATION OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation of this Court's November 10, 2022 Standing Order regarding Briefing in All Cases. The text of this brief, including footnotes, was prepared in Times New Roman, 14 point. According to the word processing system used to prepare it, the brief contains 4,441 words, excluding the case caption, signature block, table of contents and table of authorities.

 /s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)

Dated: March 18, 2025